***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Dollar and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the deputy commissioner as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Zenith Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the admittedly compensable injury was November 9, 1994.
5. Defendants filed an I.C. Form 60, dated June 6, 2002, admitting plaintiff's right to compensation for his injury by accident on November 9, 2004.
6. Plaintiff's average weekly wage is $1,132.00, which yields the maximum weekly compensation rate for 1994 of $466.00.
7. The parties participated in a mediated settlement conference on October 28, 2003, which resulted in an impasse. Defendants have paid the entire mediation fee of $1,100.00, and are entitled to a credit in the amount of $550.00 for plaintiff's share of the mediation expenses against benefits that are awarded by the Commission.
8. The issue for determination is whether plaintiff is entitled to attendant care in excess of the sixteen hours per day presently being provided by defendants, pursuant to N.C. Gen. Stat. § 97-25.
9. The parties had previously listed a second issue as to the amount of permanent partial disability benefits to which plaintiff may be entitled under N.C. Gen. Stat. § 97-31. However, at the hearing before the deputy commissioner, they agreed this issue was not ripe for determination. Therefore, this Opinion does not address this matter.
10. The parties agreed to stipulate plaintiff's medical records, the I.C. Forms, pleadings and Orders into evidence.
 *********** EVIDENTIARY RULINGS
Defendants motion to receive new evidence is denied at this time as the most appropriate forum would be before a deputy commissioner when defendants request a hearing. Likewise, a ruling on plaintiff's "Emergency Motion" filed October 24, 2005 is more appropriately ruled upon at the deputy level.
 ***********
Based upon all of the competent evidence adduced from the record the Full Commission makes the following additional
 FINDINGS OF FACT
1. On November 9, 2004, plaintiff was a thirty-two year old male who was working as a vinyl window installer when he sustained severe electrical burns after the metal ladder on which he was working struck a live electric wire. Plaintiff's coworker, who was holding the ladder, was also electrocuted in the accident. The coworker died at the accident scene.
2. Following the compensable injury, plaintiff was airlifted to the UNC Hospitals Burn Center where his left arm was amputated due to the severity of the burns sustained. He had total body burns to forty-one percent of full thickness of his total body surface. His right forearm was amputated below the elbow on November 14, 1994 due to the severity of injuries. Plaintiff has also had an amputated right great toe, partially amputated right second toe, partial left foot amputation, and loss of his right eye as a result of the compensable injury. He also had renal, pulmonary and cardiac involvement as a result of the electrical shock. Plaintiff was released from UNC Hospitals on March 29, 1995.
3. Board certified physical medicine and rehabilitation specialist Dr. Adora Matthews, Medical Director of Health South Rehabilitation Hospital in Florence, South Carolina, has been plaintiff's authorized treating physician since 1996. For some period of time prior to 2002, Dr. Matthews held the opinion plaintiff required twenty-four hours per day of attendant care services due to his functional dependence level. Plaintiff lost both hands in the industrial accident and has been completely dependent on others for basic functions such as feeding, clothing, bathing, and toileting since the date of the injury giving rise to this claim or shortly thereafter. However, this opinion was not recorded in her notes until March 4, 2003.
4. The carrier retained Laura Weiss Graves of Laura Weiss Associates to prepare a life care plan in February of 2002. Ms. Weiss interviewed plaintiff on May 3, 2002, during which he reported being dependent on others due to the loss of his hands; having pain numbness and tingling in most of his body; having blindness due to the loss of the right eye; feeling isolated due to inability to drive; having fear of being alone, fear of death, fear of someone breaking into his home to assault him and fear of TENS units which replicate the electrical shock; having grief over being unable to work and grief over the coworker's death; and having insomnia on a daily basis. He also reported experiencing a hearing loss, which Ms. Graves recommended he report to his doctor. Plaintiff reported he was six feet tall and weighed one hundred and forty-seven pounds. In May of 2002, defendants were providing plaintiff nine hours per day of attendant care services.
5. On August 21, 2002, plaintiff was admitted to Health South for a consultation and evaluation on the home plan. The physical therapist recommended plaintiff have access to a hospital wellness program or local YMCA for access to pool and exercise equipment, and that he utilize ankle cuff weights to strengthen his legs. The occupational therapist found plaintiff's right arm prosthesis was worn and needed replacement, recommended installation of a bidet, and purchase of a shower bench and hand-held shower hose. It was also recommended plaintiff be provided with an electric hospital bed and gel mattress overlay for better mobility and skin management. Dr. Matthews noted nine hours per day of attendant care services was inadequate, as plaintiff was unable to doff the right arm prosthesis without assistance and is totally dependent on others for care when not wearing the prosthesis. Due to extensive scarring and inability of the skin to regulate temperature, Dr. Matthews found plaintiff would benefit from a generator which would function to provide a stable environment should he lose electric power. She also recommended a podiatry evaluation every three months for skin assessment and nail care due to deformities and amputations, as he was experiencing nail growth at the amputation site. In the August 25, 2002 discharge report, Dr. Matthews noted incorrectly plaintiff had twenty-four hours of attendant care services.
6. On August 29, 2002, Ms. Graves prepared a life care plan, which found plaintiff to be totally dependent on others for dressing, feeding, grooming, toileting, housework, and meal preparation without his prosthesis. He is totally dependent on others for assistance with bathing, laundry and yard work. Plaintiff has balance problems due to the bilateral loss of great toes. He has difficulty going to sleep and awakens frequently, and medication has been prescribed for this. As a result, plaintiff was fearful about his being able to awaken in the event of an emergency. The life care plan indicated Dr. Matthews recommended sixteen hours per day of attendant care and projected plaintiff would require ongoing occupational therapy and physical therapy; a one-time psychological evaluation; monthly case management; ongoing psychological counseling; prosthetic maintenance, supplies and replacement; durable medical equipment; lifeline system; a bidet; environmental control unit; prosthesis fit socks; latex gloves; protective eye glasses; aids for transportation; architectural renovations; wellness program access; and access to medical providers, including Gorrin Eye Clinic, orthopedic surgeon Dr. Wilkins, Dr. Matthews at Health South, a podiatrist, and plastic surgeon Dr. William Young for skin monitoring.
7. Ms. Graves revised her report on October 9, 2002 to add a speakerphone with answering machine, and to list medications from Nye's Pharmacy in Conway, South Carolina.
8. On March 4, 2003, Dr. Matthews for this first time put in writing a prescription for twenty-four hours of attendant care. She opined, and the Full Commission finds as fact, plaintiff is dependent upon another person's absolute care for feeding, grooming, bathing, dressing and toileting. He is also fearful of being alone and is incapable of any self-care activity on his own due to the severe and catastrophic permanent injuries. In her deposition, Dr. Matthews was puzzled and disagreed with Ms. Graves indication that the doctor had recommended only sixteen hours as she felt plaintiff had always needed full time attendant care services, due to his complete dependence on others. However, defendants were not provided a copy of Dr. Matthews Discharge Summary until her deposition on June 21, 2004.
9. On April 25, 2003, plaintiff's counsel filed a Motion to Compel Medical Treatment, which indicated authorized treating physician Dr. Adora Matthews had recommended twenty-four hour home care, a podiatrist evaluation regarding a toenail growing from the amputated right toe, audiology evaluation to assess hearing loss, and a new prosthetic eye. Counsel indicated he had repeatedly tried to have this approved but did not receive any response from defendants.
10. On April 28, 2003, plaintiff filed an I.C. Form 33 Request for Hearing on the issue of whether defendants should be ordered to provide twenty-four hour home care, a podiatry evaluation for a toenail growing from the amputated right toe, an auditory evaluation for hearing loss and a new prosthetic eye.
11. On May 1, 2003, Ms. Graves transmitted a revised life care plan to Claims Technical Specialist Jan Lowery with Zenith Insurance Company, which added the estimated cost for sixteen hours of home health aide care.
12. On May 8, 2003, defendants filed a Motion for an Extension to reply to plaintiff's Motion, and the Commission granted the Motion. Also on May 8, 2003, Mr. Kurani filed his letter of representation with the Commission. However, the Commission's paper file does not reflect any Response was ever filed.
13. On May 21, 2003, Special Deputy Commissioner Chrystina Franklin denied plaintiff's motion due to failure to submit supporting medical documentation. She further noted that should supporting documentation become available, plaintiff may file a new motion.
13. Defendant filed their Form 33R Response to Request for Hearing on May 28, 2003 which provided they had approved plaintiff's request for a new prosthetic eye and a podiatry evaluation, but denied the twenty-four hour home care and audiology evaluation, as defendants contend plaintiff did not sustain injuries to his ears which resulted in hearing loss.
14. On May 30, 2003, plaintiff filed a Motion for Reconsideration and attached Dr. Matthews' March 4, 2003 Medical note which indicated a history of plaintiff having decreased hearing in his left ear, a toenail growing from the right great toe which was amputated, and that he still did not have twenty-four hour home care and needed a prescription from Dr. Matthews to get this. Dr. Matthews also noted plaintiff had broken his prosthetic eye and was waiting for a replacement. She recommended a podiatry evaluation with Dr. Weber regarding the toenail growth from the amputated toe, an audiology evaluation to assess hearing loss, and a new prosthetic eye.
15. Defendants' Response to the Motion for Reconsideration, filed on June 6, 2003, reflected defendants had authorized the podiatry evaluation and the new prosthetic eye. Defendants contend there was no evidence the hearing loss was causally related to the compensable accident. Further, they stated plaintiff currently receives sixteen hours per day of home attendant care, and there was no explanation in Dr. Matthews' note as to why plaintiff needs twenty-four hour attendant care. However, they were willing to consider the request upon a showing it was medically necessary. Defense counsel included with the Response an authorization from the carrier to Gorrin's Clinic for the custom ocular prosthesis.
16. By Order filed on June 24, 2003, Special Deputy Commissioner Kesler denied the Motion for twenty-four hour attendant care and the new prosthetic eye and the parties were directed to address these issues at a full evidentiary hearing before a deputy commissioner.
17. Between August 29, 2002 when the life care plan was completed and March 4, 2003, the carrier was on notice that Dr. Matthews found the nine hours of attendant care services to be inadequate; and plaintiff was recommended to receive at least sixteen hours per day of attendant care services per the life care plan. Despite the medical recommendations and absent contrary medical opinion, defendants refused to authorize the increase in hours of attendant care services without justification. This action by defendants constitutes unfounded litigiousness.
18. After defendants received a copy of Dr. Matthews' prescription for twenty-four hours per day attendant care, defendants again refused to authorize the increase in attendant care services. Defendants' refusal to provide this care without reasonable justification constitutes unfounded litigiousness.
19. Since April 21, 2003, plaintiff's counsel Jeff Chandler expended 20.30 hours of attorney time and 2.20 hours for legal assistance time in an attempt to gain defendants' authorization for the increase of attendant care services for plaintiff. The reasonable value of said services is $3,000.00.
20. Since March 16, 2003, plaintiff's counsel Mark Sumwalt has expended 52.20 hours of attorney time, 18.10 hours of legal assistance time, and 1.70 hours of associate time in an attempt to gain defendants' authorization for the increase of attendant care services for plaintiff. Mr. Sumwalt is a board certified specialist in workers' compensation law. The reasonable value of said services is $10,414.52.
21. Plaintiff would benefit from an audiology evaluation as suggested by Dr. Matthews.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred, including but not limited to, the replacement of the prosthetic eye, the audiology evaluation, the podiatry evaluation and care. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1
2. As defendants' actions have not been reasonable and have been based in stubborn, unfounded litigiousness, plaintiff is entitled to have defendants pay his reasonable attorneys' fees incurred in an effort to gain defendants' authorization for the twenty-four hour attendant care, as ordered by Dr. Matthews. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. The June 24, 2003 Order of Special Deputy Commissioner Chrystina Kesler is hereby SET ASIDE.
2. Defendants are ordered to provide the twenty-four hour attendant care services, which they agreed to authorize as of March 4, 2004.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act. This shall include, but is not limited to, podiatry evaluations and care, maintenance and repair of the prosthetic eye, and an audiology evaluation.
4. Due to their unfounded litigiousness for failure to pay according to the life care plan for 16 hours attendant care which was well documented, defendants shall pay to Mark Sumwalt the reasonable attorney's fee of $10,414.52, which represents those sums incurred in the attempt to gain defendants compliance with Dr. Matthews' ordered treatment.
6. Due to their unfounded litigiousness for failure to pay according to the life care plan for 16 hours additional attendant care which was well documented, defendants shall pay to Jeff Chandler the reasonable attorney's fee of $3,000.00, which represents those sums incurred in the attempt to gain defendants compliance with Dr. Matthews' ordered treatment.
7. A reasonable attorney's fee of twenty-five percent of continuing indemnity benefits, from the date of the filing of this Opinion and Award, is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly to counsel.
8. Defendants shall pay the costs, including an expert witness fee of $270.00 to Dr. Adora Matthews.
This the 14th day of October 2005.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ BUCK LATTIMORE COMMISSIONER